**Gale PRIZEVOITS, Plaintiff,**

v.

**INDIANA BELL TELEPHONE COMPANY, INC., Defendant.**

**No. IP 93–C–1341–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 6, 1995.

pleting this standard tax form.

David L. Rose, Washington, DC, Mark R. Waterfill, Julia E. Heitz, Leagre & Barnes, C. Warren Holland, Michael W. Holland, Holland & Holland, Indianapolis, IN, for plaintiff.

Michael A. Bergin, Kim F. Ebert, Julia F. Crowe, Ariane Schallwig Johnson, Locke Reynolds Boyd & Weisell, R. Anthony Prather, Indianapolis, IN, for defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is before the Court on the motion of Defendant Indiana Bell Telephone Company, Inc., for summary judgment. For the reasons stated below, the motion is granted.

## I. BACKGROUND

Plaintiff Gale Prizevoits was terminated by Defendant Indiana Bell Telephone Company, Inc. ("Bell") on or about November 9, 1992. At the time of her termination, Prizevoits was a manager in the Comptroller's group, which was part of Bell's Finance Department. At the time of her termination, Prizevoits' area of responsibility was federal, state and local taxes. From January, 1992, until the time of Prizevoits' termination, her immediate supervisor was Bell's Comptroller, James Hines. Hines reported to the Vice President of Finance, Chuck Stimming. Hines' predecessor as Prizevoits' immediate supervisor was David Ober, who left Bell in December, 1991.

Prizevoits claims she was terminated as a result of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a[1] and 2000e–5.[2] Bell contends that Prizevoits was terminated as a result of the 1992–93 Workforce Resizing Program and that the decision to terminate Prizevoits was based upon an assessment of Prizevoits' performance and managerial skills and a comparison of Prizevoits' skills with those of other managers in her salary grade. Thus, Bell asserts, Prizevoits was terminated for a legitimate nondiscriminatory reason. Prizevoits responds that her selection for termination as part of the Workforce Resizing Program was pretextual because the opinions of at least two of Prizevoits' supervisors who were instrumental in Bell's decision to terminate Prizevoits were tainted by their sexually discriminatory attitude toward Prizevoits.

**1.** The Court's June 15, 1994, Entry amended Plaintiff's Complaint to state claims under § 1981a instead of § 1981.

**2.** Prizevoits has also claimed that she was selected for termination because of her age. That

## II. DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case," Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. See Wolf v. City of Fitchburg, 870 F.2d 1327, 1329 (7th Cir.1989); Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir.1983), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists are insufficient to raise a factual issue. See Shacket v. Philko Aviation, Inc., 681 F.2d 506, 513 n. 8 (7th Cir.1982), rev'd on other grounds, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). The moving party is entitled to a judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Catrett, 477 U.S. at 323, 106 S.Ct. at 2552. If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. See Wolf, 870 F.2d at 1330. The Seventh Circuit has described the

claim is being pursued by Prizevoits in a class action pending before Judge McKinney entitled Debra Allard, et al. v. Indiana Bell Telephone Company, Inc., Cause No. IP93–C–1346–M/S.

application of these principles in the context of Title VII litigation:

> In Title VII cases, we approach the application of these principles with a special caution. Summary judgment is infrequently an appropriate resolution. The factual issues presented in such litigation, including the issue of discriminatory intent which is often proven by circumstantial evidence, cannot often be resolved on summary judgment. However, even when such issues of motive or intent are at stake, summary judgment is proper "where the plaintiff presents no indications of motive and intent supportive of his position."

*Powers v. Dole,* 782 F.2d 689, 694 (7th Cir. 1986) (citations omitted).

A. Claims Not Made in EEOC Charge

■ "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir.1994) (citing *Alexander v. Gardner–Denver Co.,* 415 U.S. 36; 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)). This condition precedent with which all Title VII plaintiffs must comply is not so stringent as to require the EEOC charge to contain "each and every fact that combines to form the basis of each claim [in the lawsuit.]" *Id.* (citations omitted). However, in order to be cognizable, Title VII claims set forth in a complaint must be: (1) reasonably related to the allegations of the EEOC charge, and (2) growing out of the allegations of the EEOC charge. *Id.* (citations omitted). Different claims of sex discrimination are not necessarily reasonably related to each other:

> [b]ecause an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination.

*Id.* at 501. The EEOC charge and complaint "must, at minimum, describe the *same conduct* and implicate the *same individuals.*" *Id.* (emphasis in original).

■ Prizevoits completed her EEOC charge on December 11, 1992. Prizevoits' EEOC charge states that she was discriminated against from November 9, 1992, to November 13, 1992. Although the EEOC charge form has a box to check where the charging party contends that the discrimination is or was a "continuing action," Prizevoits did not check the box. Prizevoits described the particulars of Bell's discrimination against her as follows:

I. I was employed by Indiana Bell on May 26, 1981. At the time of my termination on November 9, 1992, I was employed as a Manager in Taxes.

II. Effective November 13, 1992, I was terminated as a part of a company wide reduction in force.

III. I believe that I was terminated because of my age, 42, and my sex, female, in violation of the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act, as amended.

Thus, Prizevoits' EEOC charge is clearly limited to her termination decision and those people associated with that decision.

To the extent that Prizevoits' complaint and briefing may be read to allege sexual harassment, her EEOC charge is not reasonably related to such an allegation. *Id.* at 503 ("[o]rdinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination") (citations omitted). Similarly, the claims Prizevoits is attempting to make concerning her former supervisor, Ober, are also beyond the scope of her EEOC charge. Ober left Bell in December, 1991, a year before Prizevoits filed her EEOC charge.[3] Ober had nothing to do with the decision to terminate Prizevoits. In her EEOC charge, Prizevoits only references her termination from Bell. Therefore, only allegations con-

---

3. Even if Prizevoits' claims regarding Ober were deemed to be reasonably related to the allegations in her EEOC charge, they would still have to be disregarded as they occurred more than 300 days before the filing of the EEOC charge.

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234, *reh'g denied, sub nom. Independent Fed'n of Flight Attendants v. Trans World Airlines, Inc.,* 456 U.S. 940, 102 S.Ct. 2001, 72 L.Ed.2d 461 (1982).

cerning her termination are reasonably related to her EEOC charge; any other claims must fail.

### B. Sex Discrimination Claim

Title VII makes it unlawful "for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex...." 42 U.S.C. § 2000e–2(a)(1). A plaintiff alleging a violation of Title VII must establish that she has been the victim of intentional discrimination, *see Friedel v. City of Madison*, 832 F.2d 965, 971–72 (7th Cir. 1987), which she can do in two different ways: (1) by offering direct proof of discrimination, *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); or, (2) by relying on indirect evidence using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burden-shifting method of proof. *See Bruno v. City of Crown Point*, 950 F.2d 355, 361 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 2998, 120 L.Ed.2d 874 (1992).

Prizevoits proceeds in the instant case via the burden-shifting method. In *McDonnell Douglas*, the Supreme Court set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. *Id.* Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* Finally, should the defendant carry this burden, the plaintiff must then prove by a preponderance of the evidence that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *Id.; see Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (citing *St. Mary's Honor Center v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)).

For a plaintiff in a Title VII action to establish a prima facie case of discrimination, she must show that (1) she belongs to a protected group; (2) she was satisfactorily performing the duties of her position; (3) she was discharged; and (4) her employer sought a replacement for her. *Jones v. Jones Bros. Constr. Corp.*, 879 F.2d 295, 299 (7th Cir.1989). In a reduction in force case, "the plaintiff may establish the fourth element by showing that others not in the protected class were treated more favorably." *Id.* (citations omitted). For purposes of this motion for summary judgment, Bell concedes that Prizevoits has made her prima facie case.

Once a plaintiff has made her prima facie case, the burden shifts to the defendant to sufficiently explain the reason for its allegedly discriminatory actions. The defendant's burden is one of production only, not persuasion. *St. Mary's Honor Center*, — U.S. at —, 113 S.Ct. at 2747. If the defendant can produce and support at least one legitimate, nondiscriminatory reason for the termination, "the presumption raised by [plaintiff's] prima facie case is rebutted and [the presumption then] drops from the case." *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 255 & n. 10, 101 S.Ct. 1089, 1094–95 & n. 10, 67 L.Ed.2d 207 (1981)) (internal quotation marks omitted).

This Court finds that the explanations given by Bell as to why Prizevoits was considered for the downsizing program and ultimately terminated sufficiently rebut Prizevoits' prima facie face. Bell has provided the Court with ample evidence to show that Bell was indeed implementing a downsizing program in 1992. Based on Prizevoits' 1990 and 1991 overall performance ratings, managerial competency ratings, and promotion potential, she was ranked in the bottom 50% of managers in salary grade 5 and, accordingly, Prizevoits was placed in the "at risk" pool for salary grade 5 managers. A total of 69 salary grade 5 managers were placed in the "at risk" pool, including two from Prizevoits' group, James Hineman and Nina Cotter.

A committee of approximately 25 managers in salary grade 6 and above then met to

discuss the managers in the "at risk" pool for salary grade 5. Because Prizevoits was viewed as difficult to work with and difficult to understand, objectively evidenced by a high turnover rate in her subordinates, she was ranked eighth lowest in the "at risk" pool. The ranked list of salary grade 5 "at risk" managers was then passed along to Bell's corporate officers who determined that Bell needed 25 less salary grade 5 managers. As a result, 25 of the lowest ranked salary grade 5 managers, including Prizevoits and Hineman, were selected for termination.[4]

■ Thus, the key question is whether Prizevoits has presented any evidence creating a genuine issue of fact as to pretext. To prove that an employer's stated reasons for terminating an employee are pretextual, the employee must establish that he or she has been the victim of *intentional* discrimination. *See Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984). This showing may be made in one of two ways: "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. No matter which showing is made, "[t]his burden ... merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* The employee ultimately must show that the employer's discriminatory intent was the "but for" cause of the adverse action. *See Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 923 (7th Cir. 1988); *McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659, 664 (7th Cir.1987), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

■ Prizevoits submits several reasons why she contends the Court should find Bell's reason to be pretextual. Prizevoits offers testimony that Hines engaged in a "buddy system" with a few men, including Prizevoits' successor, Mike Gardner. Prizevoits alleges that Hines purposely sabotaged her reviews so that he could move Gardner into her position. As proof of Hines' motive, Prizevoits contends that immediately after becoming Prizevoits' direct supervisor, Hines asked Prizevoits if she would consider going part-time and job sharing with another part-time employee in the department. Prizevoits alleges that Hines also asked her to switch jobs with Gardner and to consider transferring out of the tax unit. After Prizevoits refused Hines' requests but before Prizevoits was placed in the "at risk" pool, Hines lowered Prizevoits' overall performance evaluation from a 4 to a 3 (out of a possible 5). Finally, after Prizevoits was terminated she was replaced by Gardner.

While the alleged system of mentoring employed by Hines, in which his "buddies" were only men (to the exclusion of some male and all female employees), is, to say the least, troubling, nothing in Prizevoits' allegations about the buddy system establish a genuine issue of material fact as to pretext. The central reason which Bell presents in support of the trend toward poor reviews for Prizevoits is her managerial style and, in particular, the high rate of turnover in her subordinates. While Prizevoits alleges that much of the turnover of employees in her department could be explained away by looking at the individual cases, Prizevoits does not dispute that the turnover rate was indeed high. Furthermore, Prizevoits does not present any evidence from her former subordinates to refute Bell's contentions that these people actually made complaints about Prizevoits.[5] In short, although Prizevoits has made alle-

---

4. Only 18 of these 25 were involuntarily terminated because the remaining 7 had elected to leave Bell in exchange for enhanced benefits under the voluntary phase of the downsizing program.

5. Prizevoits does offer her own testimony for the reasons that the employees left as well as the testimony of two other people from the department. However, this does not directly refute

Bell's allegation about problems with Prizevoits' management style. For instance, the fact that one of Prizevoits' subordinates left to start his own firm does not necessarily mean that he was satisfied with her management. He could have easily made his decision to leave and begin his own business in part based upon his unhappiness with having to work for a manager who he felt had a bad management style.

gations of Hines tainting the decision procedure, Prizevoits has not presented any reason that the numerous Bell employees involved in the decision to terminate Prizevoits did not or could not have formed honest beliefs that Prizevoits' problems with management skills properly placed her close to the bottom of the ranking.[6] *See Lenoir v. Roll Coater*, 13 F.3d 1130, 1133 (7th Cir. 1994).

Additionally, the specific incidents Prizevoits has alleged do not add up to any genuine issue of pretext. Prizevoits offers no direct evidence of any statements or conduct suggesting that gender factored into Bell's decision. Prizevoits has not shown that Hines' inquiry as to whether Prizevoits would be interested in a part-time job sharing arrangement was at all related to Bell's decision to terminate her. *See Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1265–66 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994). The fact that Gardner replaced Prizevoits is similarly unpersuasive. Prizevoits herself testified at her deposition that the nature of her job was changing in the months before she was terminated. Much of the substantive tax work that Prizevoits had done was transferred to another office outside of Indiana and Prizevoits' successor, in fact, did not actually have to serve as a full replacement for her. Therefore, that Gardner was a lower salary grade manager than Prizevoits with less substantive knowledge does not appear to be relevant. *See Grohs v. Gold Bond Bldg. Prod.*, 859 F.2d 1283, 1287–88 (7th Cir.1988), *cert. denied*, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989).

This is not to say that this Court finds Title VII to be inapplicable to sophisticated forms of sex discrimination, such as the one alleged by Prizevoits. For instance, it is perfectly believable that a supervisor could act out a discriminatory animus by routinely reviewing women or minorities in a harsher fashion or refusing to serve as a mentor or advisor for anyone but members of his race or sex.[7] However, in reviewing discrimination cases, courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *Kralman v. Illinois Department of Veterans' Affairs*, 23 F.3d 150, 156 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994) (citation omitted). In light of Bell's showing of a legitimate nondiscriminatory reason, the evidence set forth by Prizevoits fails to raise a triable issue of fact regarding whether gender was the determining factor in Bell's decision to terminate Prizevoits. The reality is that Prizevoits has made no such showing of discriminatory intent in Bell's decision. At best, Prizevoits has made a showing of a personality conflict and a possibly unresponsive or mediocre supervisor. *Andre v. Bendix Corp.*, 774 F.2d 786, 799 (7th Cir.), *reh'g denied* (1985); *see Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1233 (7th Cir.1986) ("a personality conflict between and employer and employee can provide legitimate grounds for discharge"); *Miller v. Aluminum Co. of America*, 679 F.Supp. 495, 501 (W.D.Pa.) ("[f]avoritism and unfair treatment, unless based on a prohibited classification, do not violate Title VII"), *aff'd without opinion*, 856 F.2d 184 (3d Cir. 1988).

### III.   CONCLUSION

For the reasons stated above, the motion of Defendant Indiana Bell Telephone Company, Inc., for summary judgment is granted.

It is so ORDERED.

---

6. In fact, many women appear to have fared satisfactorily in the ranking system. Although 16 of the 69 salary grade 5 managers in the "at risk" pool were women (approximately 23%), only 3 of the 18 salary grade 5 managers who were terminated were women (approximately 17%).

7. Of course, there is no evidence of such a pattern in this case.