**Lori L. LEISEN, Plaintiff,**

v.

**CITY OF SHELBYVILLE, Defendant.**

**No. IP 96–0121–C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 22, 1997.

W. Russell Sipes, Laudig, George, Ruther-
ford & Sipes, Indianapolis, IN, for plaintiff.

James S. Stephenson, Stephenson, Daly,
Morow & Kurnik, Indianapolis, IN, for de-
fendant.

## *ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT*

BARKER, Chief Judge.

Plaintiff Lori Leisen was the first female firefighter in the Shelbyville Fire Department. Leisen's employment as a firefighter began in September 1992, and was terminated in August 1995 because Leisen had failed to become a certified paramedic within three years, as required by the terms of her employment contract. Being the first woman firefighter in Shelbyville was apparently not easy for Leisen. Leisen alleges that during her employment she was subjected to sexual harassment and disparate treatment on the basis of her gender. Leisen also alleges that she suffered from "emotional disabilities" as a result of job-related stress and various personal crises, and that Defendant failed to accommodate her disability when it terminated her employment instead of granting her request for an extension of time in which to obtain her paramedic certificate. On January 26, 1996, Leisen filed a Complaint asserting the following legal claims:

1) *Disparate Treatment Sex Discrimination.* Leisen alleges that, because of her gender, she was treated less favorably than her male counterparts with regard to the terms and conditions of her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Complaint at ¶ 14).

2) *Sexual Harassment/Hostile Environment.* Leisen alleges that she was sexually harassed and subjected to a hostile work environment because of her gender, in violation of Title VII. (Complaint at ¶ 15).

3) *Disparate Impact.* Leisen alleges that the policies and practices of the City of Shelbyville ("the City") regarding employment with the Fire Department had a discriminatory disparate impact on female employees, including herself, in violation of Title VII. (Complaint at ¶ 16).

4) *Disability Discrimination.* Leisen alleges that the City failed to accommodate her emotional disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Complaint at ¶¶ 17–20).

5) *Breach of Contract.* Leisen alleges that the City violated the terms of her contract of employment by refusing to pay for required training, which the City was obliged by the terms of the employment contract to pay for. (Complaint at ¶¶ 21–22).

This matter is now before the Court on the City's motion for summary judgment.[1] For the reasons discussed below, summary judgment is granted in favor of the City on Leisen's Title VII and ADA claims, and Leisen's state law Breach of Contract claim is dismissed without prejudice for lack of subject matter jurisdiction.

## I. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. Pro.* 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party on the particular issue. *Methodist Medical Center v. American Medical Sec., Inc.,* 38 F.3d 316, 319 (7th Cir.1994). In considering a summary judgment motion, a court must draw all justifiable inferences in the light most favorable to the opposing party, and must resolve any doubt against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Bank Leumi Le–Israel,*

---

1. Defendant also moves for summary judgment on Leisen's "retaliation claim." (Def. Brief at 27). In her second EEOC charge, Leisen did allege that she was retaliated against for filing her initial EEOC charge. (Leisen Dep., Def. Exh. 7). Leisen appears, however, to have dropped that claim, as there is no mention of a retaliation claim in either her Complaint or her response brief Therefore, we need not address Defendant's arguments relating to retaliation.

*B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991); *Becker v. Tenenbaum–Hill Associates. Inc.,* 914 F.2d 107, 110 (7th Cir.1990). "Neither 'the mere existence of some alleged factual dispute between the parties,' nor the demonstration of 'some metaphysical doubt as to the material facts,' will sufficiently demonstrate a genuine issue of material fact. In that regard, the 'mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient'." *Forman v. Richmond Police Dept.,* 104 F.3d 950, 957 (7th Cir., 1997) (quoting *Anderson,* 477 U.S. at 247, 252, 106 S.Ct. at 2510, 2512; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

## II. ANALYSIS

### A. ADA Failure to Accommodate Claim

The City of Shelbyville, prior to 1991, had both a fire department and an ambulance department. Prior to 1986, the only requirement for employment in the ambulance department was that the employee be or become a certified emergency medical technician ("EMT"). After 1986, all new employees of the ambulance service were required to either be or become certified paramedics. (Schoentrup Aff. at ¶ 3).

On January 1, 1991, the ambulance service merged with the fire department. From that date until January 1, 1997, all new firefighters hired by the City were required to execute contracts which provided that the new employee would agree to become a certified paramedic within three years. Until the employee received paramedic certification, the employee remained on probationary status. (Schoentrup Aff. At ¶ 15; Leisen Dep., Exh. 1).

In September 1991, the fire department began the hiring process for four new employees. The published notice of the job openings included the requirement that the employee must become a certified paramedic. (Coulston Aff., Exh. 1). Leisen and three male applicants were selected for the positions. Leisen was presented with the employment contract noted above, read and understood the requirement that she was to become a certified paramedic within three years, and signed the contract on September 25, 1992. (Leisen Dep. at 19, Exh. 1).

*Leisen's Attempts to Obtain Paramedic Certification.*

In 1988, Leisen obtained certification as an EMT through a training course at Wishard Hospital in Indianapolis. She has maintained her EMT certification since that time by continuing to take training courses. (Leisen Dep. at 6–7). Prior to becoming employed at the Shelbyville Fire Department, Leisen had attempted to obtain paramedic certification through a course offered at Methodist Hospital in Indianapolis. Leisen did not complete the course, although she does not recall whether she withdrew or failed the course. (Leisen Dep. at 20–21). Leisen subsequently re-enrolled at Methodist for another paramedic course and was attending that course when she was hired by the fire department. Leisen was having problems in that course, although she does not recall the exact nature of the problems; and after consultation with the Fire Chief and the Director of Emergency Medical Services, it was agreed that she would drop out of the Methodist course and apply for a course at another hospital. (Leisen Dep. at 21–23). Shortly thereafter, Leisen enrolled in a paramedic certification program at St. Francis Hospital in Indianapolis. However, Leisen also had difficulties in the St. Francis course and was dismissed from the program in February 1994 for failing grades. (Leisen Dep. at 23).

After failing the St. Francis program, Leisen enrolled in another paramedic course offered by Columbus Regional Hospital. According to Leisen, this course went well until she failed the final examination in Advanced Cardiac Life Support. As a result of failing the ACLS final exam, Leisen was dismissed from the Columbus program in May 1995. (Leisen Dep. at 24; Coulston Aff., Exh. 3).

Leisen alleges that her failure to obtain her paramedic certification was the direct result of "emotional disabilities" she was suffering at the time. In addition to her stress and frustration at what she perceived to be sexual harassment and discrimination at work, Leisen was struggling to balance her

work, her paramedic courses, and her family life. During the course of her employment, Leisen encountered a number of personal crises, including the death of her grandfather in March 1993 (Leisen Aff. at ¶ 24), her ex-husband filing a petition to gain custody of their two children in September 1993 (Leisen Aff. at ¶ 22; Leisen Dep. at 29–30), her failure to pass the various paramedic courses in which she enrolled, the award of custody of her two children to her ex-husband in September 1994 (Leisen Aff. at ¶ 15; Leisen Dep. at 29–30), and financial difficulties resulting from the loss of her second job in early 1995. (Leisen Aff. at ¶ 29).

In 1993 Leisen began experiencing what she describes as symptoms of "stress-related depression," including sleeplessness, irritability, anxiety, an inability to concentrate, memory problems, and difficulty in relating to those around her. (Leisen Aff. at ¶ 26). On February 22, 1994, she sought counseling through the City's Employee Assistance Program at Community Hospital. Leisen was assigned to William Nelson, a Certified Social Worker for counseling. (Leisen Aff at ¶ 45; Nelson Dep., Exh. 1, p. 1). Leisen attended counseling with Nelson through August 1995, with periodic long-term breaks. (Nelson Dep., Exh. 1, p. 16).

*Leisen's Termination*

After failing the Columbus paramedic certification program, Leisen realized that she would be unable to obtain her paramedic certification within the time required by her contract, and she requested a meeting with Fire Chief Kenneth Scott ("Chief Scott") and EMS Director Steve Schoentrup ("Schoentrup") to discuss the issue. At this meeting, Leisen told Scott and Schoentrup that she "just couldn't cope" with all of her responsibilities and asked them to extend her contract so that she could continue working as a firefighter/EMT while she enrolled in yet another paramedic course. (Leisen Dep. at 36). Scott and Schoentrup refused her request and informed Leisen that they would recommend to Mayor Robert Williams that Leisen's employment be terminated. A meeting was then held with Mayor Williams, Leisen, Chief Scott and Schoentrup in attendance. Leisen told Mayor Williams that

she had failed the paramedic course because of "emotional disabilities" resulting from the stress of losing custody of her children and job-related stress. Leisen followed up with a letter to Mayor Williams explaining that she was facing "serious personal issues" and suffered from a "female medical problem" that affected her ability to sleep, and that she was undergoing counseling in an effort to better cope with her stress. (Leisen Dep., Exh. 8). She requested an extension of her contract so that she could try again to obtain paramedic certification. (*Id.*).

A second meeting was held on June 12, 1995, at which time Leisen was told to resign within thirty days or the matter would be taken to the Board of Public Works and Safety for a dismissal hearing. (Leisen Dep. at 39). Leisen attempted to submit a resignation including the conditions that she be allowed to purchase her fire gear and that she be given a positive recommendation. Chief Scott rejected her resignation because he felt he could not accept the conditions attached to it. (Scott Dep. at 98).

A dismissal hearing was held before the Board of Public Works on August 8, 1995. At some point either during or prior to the hearing, Leisen presented the Board with copies of the notes from her counseling sessions with Nelson. Leisen testified at the hearing about her "emotional disability" and requested that the Board accommodate her by extending the terms of her contract so that she could recover from her emotional problems and then have another chance to try to obtain paramedic certification. (Hearing Transcript, Pltf. Exh. 8, at 25). The Board determined that they would not extend Leisen's contract in part because they believed that allowing Leisen to continue to work in a position in which she would be giving medical attention to citizens would present liability issues. (*Id.*). The Board voted to enforce the terms of the contract as written and terminate Leisen's employment immediately. (*Id.* at 26).

In support of their motion for summary judgment on Leisen's disability claim, Defendants maintain that (1) Leisen has failed to establish that she suffered from a disability recognized by the ADA, (2) she was not a

"qualified individual with a disability," and (3) the City did not breach any duty to accommodate Leisen's alleged disability.

■ In order to invoke the protections of the ADA, Leisen must establish that she suffered from a disability as defined by the Act. *Weiler v. Household Finance Corp.,* 101 F.3d 519, 523 (7th Cir.1996). The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). Defendant asserts that Leisen did not suffer from a disability as defined in the Act because (a) she was not diagnosed with any specific mental or emotional impairment, and (b) even if she did suffer from a mental or emotional impairment, it did not substantially limit a major life activity.

Defendant attempts to characterize Leisen's condition as merely experiencing the "common emotions" of stress, anger and a sense of betrayal. (Def. Brief at 3). This both trivializes the severity of Leisen's emotional problems and mischaracterizes the evidence in the record. While Leisen was never actually diagnosed with a specific mental or emotional disorder by a medical professional, her counselor, William Nelson, has testified that she suffered from "sleep problems, memory problems, crying and anxiety, suicidal ideation, [and] that there was some depression." (Nelson Dep. at 75). In July 1995 Nelson assessed Leisen as suffering from depression and encouraged her to visit a physician or psychiatrist. (Nelson Dep. at 38). Furthermore, the record indicates that Leisen was taking the prescription drug Prozac in July 1995. (*Id.*). We believe that Leisen has presented sufficient evidence to create a material issue of fact whether she was suffering from depression, a recognized mental impairment.

■ Even if Leisen did suffer from depression, we must still determine whether she has established that her depression substantially limited a major life activity. EEOC regulations interpreting the ADA define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."

29 C.F.R. at 1630.2(i); *Weiler,* 101 F.3d at 523. A person is "substantially limited" in a major life activity if she "is either unable to perform a major life function or is 'significantly restricted as to the condition, manner or duration' under which [she] can perform a particular major life function, as compared to the average person in the general population." *Id.* (quoting 29 C.F.R. at 1630.2(j)).

■ Leisen asserts that her illness "not only impacted her work and her ability to complete the educational requirements to become a certified paramedic, but impacted her entire ability to function." (Pltf. Response at 17). Although we do not doubt that her depression impacted her work, there is simply no evidence that she was "substantially limited" in her ability to work. Leisen admits that she did not have any trouble functioning as an EMT. (Leisen Dep. at 31–32; Nelson Dep. at 73). Even if Leisen could establish that her emotional impairment somehow prevented her from performing the job of a paramedic, that would not suffice to establish that she was substantially limited in her ability to work. It is well-established that " 'an inability to perform a particular job for a particular employer' is not sufficient to establish a substantial limitation on the ability to work; rather, 'the impairment must substantially limit employment generally.' " *Weiler,* 101 F.3d at 524 (quoting *Byrne v. Bd. Of Educ. School of West Allis–West Milwaukee,* 979 F.2d 560, 565 (7th Cir.1992)).

■ The only other major life activity which Leisen alleges was substantially limited by her emotional impairment is the ability to learn. Initially we note that Leisen has not presented any evidence to support her conclusion that her failure to obtain her paramedic certification was caused by her depression. The mere fact that she both suffered from depression and failed to successfully complete a paramedic course does not, without more, establish that there is a causal connection between those two events. Nonetheless, even if Leisen could establish such a causal connection, that would still be insufficient to establish that her depression substantially limited the major life activity of learning. Just as an inability to perform a

particular job is insufficient to establish a disability in regard to working, the inability to perform a particular activity for a particular educational course does not establish a disability in regard to learning. *Knapp v. Northwestern University,* 101 F.3d 473, 481 (7th Cir.1996), *reh'g and suggestion for reh'g en banc denied* (1997); *certiorari denied,* — U.S. ——, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997) (No. 96–1622). Even if Leisen's depression made it impossible for her to successfully complete any paramedic course, she does not assert that she was prevented from learning in other contexts. In fact, Leisen admits that the course she took at the Columbus hospital went fine until she failed her final exam in advanced cardiac life support. (Leisen Dep. at 14). Furthermore, Leisen was able to maintain her EMT certification, which included both a classroom and a practical component, throughout her employment with the Shelbyville Fire Department. (Leisen Dep. at 6–8). Therefore, we conclude that Leisen has failed to establish that her depression substantially limited her ability to learn.

Because Leisen has failed to demonstrate the existence of a material issue of fact with regard to whether her depression substantially limited a major life activity, she is not considered to be an individual with a disability as defined by the ADA. We therefore need not address Defendant's contentions that Leisen was not a "qualified individual with a disability" or that they did not fail to accommodate her disability. Accordingly, Defendant's motion for summary judgment on Leisen's ADA claim is granted.

### B. Title VII Disparate Treatment Claim

On June 21, 1995, after she had been asked to resign or face a dismissal hearing, Leisen filed a charge with the EEOC alleging the following five, specific allegations of disparate treatment:

(1) In November 1994 Leisen was injured and was placed under certain medical restrictions which the Shelbyville Fire Department failed to honor.

(2) During September and October 1994, Leisen substituted for three other firefighters and they subsequently refused to substitute for her when she requested that they do so.

(3) In April 1995, Leisen was written up for violating grooming standards. Although this disciplinary write-up was removed from her personnel file, it was later included in a letter from Fire Chief Kenneth Scott to Mayor Robert Williams requesting that Leisen be terminated.

(4) Throughout her employment, Leisen did not receive equal assignment time on the engine and the squad.

(5) In June 1995, Leisen discovered information in her personnel file from personal conversations she had with co-workers.

(Leisen Dep., Exh. 2).

Leisen asserts that males were treated differently under similar circumstances. (*Id.*). Defendant moves for summary judgment with regard to each of these five allegations of disparate treatment. We note at the outset that while Leisen included some facts relating to these allegations in the facts section of her response brief, she did not discuss her disparate treatment claims in the argument section of her brief. While we might take this as an indication that Leisen has conceded these claims, we think it serves better the interest of justice to address the merits of these claims based on the facts as they have been presented.

■■■ In order to establish a prima facie case of disparate treatment based on gender, Leisen must present evidence showing that (1) she is a member of a protected class; (2) she met her employer's legitimate business expectations or conducted herself in a manner consistent with those expectations; (3) she suffered from an adverse employment action; and (4) similarly situated males were treated more favorably. *Atkins v. Board of School Commissioners of the City of Indianapolis,* 830 F.Supp. 1169, 1174 (S.D.Ind. 1993) (citing *Kizer v. Children's Learning Center,* 962 F.2d 608, 611–12 (7th Cir.1992); *Williams v. Williams Elec., Inc.,* 856 F.2d 920, 923 (7th Cir.1988)). If Leisen succeeds in presenting a prima facie case, the burden then shifts to the City to articulate a legiti-

mate non-discriminatory reason for its employment action. If the City meets this burden of production, the burden then shifts back to Leisen to demonstrate that the proffered explanation is pretextual. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1122 (7th Cir.1994); *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We will address each of Leisen's alleged instances of disparate treatment in turn.

### 1. Refusal to Honor Medical Restrictions

█ In November 1994, Leisen injured her back lifting a cover off a well at her home. Leisen consulted a chiropractor and the Fire Department physician regarding her injury and was given certain medical restrictions. (Leisen Dep. at 50). While Leisen has not explained the exact nature of her medical restrictions, it appears that she was instructed not to lift or climb, or to sit for extended periods of time (Leisen Dep. at 50, 53). Initially, the Department attempted to accommodate Leisen's medical restrictions by assigning her to drive the ambulance, while other employees lifted and carried equipment. (Leisen Dep. at 48). Leisen drove the ambulance for only one day. (Leisen Dep. at 49). The following day Leisen's schedule and duties were changed so that she was only required to work 8:00 to 5:00 Monday through Friday, rather than her normal twenty-four hour shift. Her assignment was changed to a "desk job" typing departmental rules and regulations on the computer. (Leisen Dep. at 52–53).

In her deposition testimony, Leisen asserts that this desk job assignment violated her medical restrictions by requiring her to sit for extended periods of time. However, as Defendant points out, Leisen admits that she was permitted to get up and walk around anytime she needed to, and that she in fact did get up from her desk periodically. (Leisen Dep. at 53–54). We agree with Defendant that Leisen has failed to establish that the Department took any adverse employment action against her. The evidence reflects that the Department attempted to honor Leisen's restrictions by assigning her to drive the ambulance, and when that did not work out, by assigning her to a desk job. Leisen has failed to demonstrate how these two assignments violated her medical restrictions. Therefore, we conclude that Leisen has failed to establish the third element of a prima facie case of disparate treatment with regard to the assignments given her while she was under medical restrictions.

█ Leisen has also failed to establish the fourth element of a prima facie case: that similarly situated males were treated more favorably. Leisen refers in her deposition testimony to two male employees whom she believed were treated more favorably with respect to medical restrictions imposed upon them. Leisen alleges that while Allen Hewitt was under medical restrictions for a leg injury, he was permitted to work his normal twenty-four hour shift and that she occasionally observed him sitting in a recliner watching television. (Leisen Dep. at 55–56). Leisen admittedly does not know the extent of Hewitt's injury or the nature of his medical restrictions, nor does she know what accommodations, if any, the Department made with regard to Hewitt's assigned duties (Leisen Dep. at 56–57).

Leisen also alleges that Deputy Chief Benfield suffered a hand injury related to Carpal Tunnel Syndrome, which resulted in his being off work for some time, and that when he returned to work he was assigned to light duty. Once again, Leisen admits that she does not know the nature of Benfield's medical restrictions, if any, nor does she know whether his assignment to light duty was consistent with any medical restrictions he might have been under. The facts alleged by Leisen fail to establish that either Hewitt or Benfield were similarly situated to her in terms of whether or not the Department honored medical restrictions imposed upon them when they were injured. Accordingly, Defendant's motion for summary judgment is granted on Leisen's claim that she was subjected to disparate treatment with regard to the assignments she was given while under medical restrictions.

### 2. Co-workers' Refusal to Substitute for Leisen.

It is apparently the practice among firefighters at the Shelbyville Fire Department that, when a firefighter desires time off during a regularly scheduled shift, he or she can request that another firefighter fill in for him or her. (Coulston Aff. at ¶ 8; Leisen Dep. at 59–60). Those firefighters who request that a co-worker fill in for them are expected to return the favor at some agreed upon future time. (*Id.*). Leisen alleges that, at various times, she filled in for firefighters Hewitt, Barnett and Harmes, but that when she asked them to return the favor and fill in for her, they did not. Leisen brought this to the attention of Chief Scott and Deputy Chief Benfield, but they did not take any action. (Leisen Dep., Exh. 2).

Leisen's allegations fail to establish a prima facie case of disparate treatment because Leisen fails to show that she was subjected to an adverse employment action *by her employer*. Her co-workers' failure to honor their informal obligation to fill in for her is not an action attributable to the employer; it is merely a case of being "stiffed" by her co-workers. Leisen admits that she is not aware of anything the Chief has ever done or is supposed to do when a co-worker fails to "pay back" a firefighter who has filled in for him. (Leisen Dep. at 63). Furthermore, because Leisen is not aware of any instance where the Chief intervened on behalf of a male firefighter in a similar situation, she has failed to establish that similarly situated male employees were treated more favorably. Accordingly, Defendant's Motion for Summary Judgment is granted on Leisen's claim that she suffered disparate treatment with regard to the departmental practice of firefighters filling in for one another.

### 3. Disciplinary Write-up for Violation of Grooming Standards.

In April 1995, Leisen received a disciplinary write-up from Deputy Chief Benfield for violating certain grooming standards. She complained to Chief Scott, who removed the write-up from her file because he agreed that other firefighters who violated grooming standards were not disciplined.

(Leisen Dep. at 65). Thus, in the end, Leisen received the same treatment as other similarly situated employees in that she was not disciplined for violating grooming standards. Leisen's claim seems to be that she was treated less favorably than male employees because Chief Scott referenced this incident in the letter he sent to Mayor Williams discussing whether or not Leisen's contract should be extended or she should be terminated. The portion of Chief Scott's letter which references this incident reads as follows:

> Lori has had some problems with Deputy Chief Benfield over her hair. Mr. Benfield did write her up on this matter but I would not take action on this because there are other members on the department that violated department rules and there has been no action taken against them.

(Leisen Dep., Exh. 4).

We agree with Defendant that this portion of Chief Scott's letter appears to be a fair and accurate summary of the incident, and that it simply cannot be considered an adverse employment action. Accordingly, Defendant's Motion for Summary Judgment is granted on Leisen's claim that she suffered disparate treatment with regard to her write-up for violating grooming standards.

### 4. Unequal Assignment Time to Squad and Engine.

Leisen alleges that she did not receive equal time on the squad and engine. Assuming, arguendo, that she can establish a prima facie case of disparate treatment with regard to these allegations, the claim still fails because Leisen has failed to respond to Defendant's proffered legitimate non-discriminatory reasons for not assigning her to the squad or engine.

The "squad" is a one-person assignment to which the Department attempts to assign certified paramedics. Defendant asserts that it is important that the person assigned to the squad be familiar with the geography and roads of Shelby County in order to ensure timely arrive at the scene of a call. (Schoentrup Aff. at ¶¶ 6–7). Defendant asserts that it did not assign Leisen to the

squad because she did not possess the requisite knowledge of Shelby County roads and Shelbyville streets to merit assignment to the squad. (Schoentrup Aff. at ¶ 8).

The engine is an assignment that involved fire suppression rather than the provision of emergency medical services; medical personnel were rarely assigned to the engine. (Schoentrup Aff. at ¶ 9). Defendant asserts that it did not assign Leisen to the engine because it wanted to give her more opportunity to practice and observe the rendering of emergency medical care, considering the problems she was having in her paramedic certification courses. (Coulston Aff. at ¶ 10; Benfield Aff. at ¶ 3). Leisen did not discuss this claim in her response brief, let alone establish that Defendant's proffered reasons are pretextual. Therefore, Leisen cannot withstand summary judgment on this claim. Accordingly, Defendant's Motion for Summary Judgment is granted on Leisen's claim that she received unequal assignments to the squad and engine.

### 5. Information Concerning Personal Conversation in Leisen's Personnel File.

■■ Leisen alleges that she discovered information in her file regarding a personal conversation she had with firefighter Rod Dickman. (Leisen Dep. at 78). Leisen admittedly does not recall the nature of the conversation documented in her file, and does not know whether other such conversations are documented in the personnel files of other employees. (Leisen Dep. at 78–80). These factual allegations fall far short of establishing either the existence of an adverse employment action or that similarly situated male firefighters were treated more favorably. Therefore, because Leisen has failed to establish a prima facie case of disparate treatment, she cannot prevail on this claim. Accordingly, Defendant's Motion for Summary Judgment is granted on Leisen's claim that she received disparate treatment with regard to the documentation in her personnel file of a conversation with another firefighter.

### 6. Public Reprimands.

■■ While Leisen did not include any discussion of her disparate treatment claims

in the argument portion of her response brief, she did make reference in her statement of facts to a sixth instance of alleged disparate treatment. Leisen alleges that she was constantly subjected to public verbal reprimands by her supervisors and co-workers, whereas male firefighters were generally reprimanded in private. (Pltf. Response at 8). Leisen cites two specific examples of being subjected to public reprimand. First, Leisen alleges that Chief Deputy Benfield once publicly reprimanded her for cleaning the kitchen while on duty, something which she claims all firefighters do. (Leisen Aff. ¶ 10). Leisen's second alleged instance of being subjected to public reprimand relates to an incident that occurred on the day that she was assigned to drive an ambulance because of her back injury. Leisen alleges that she was publicly and loudly reprimanded for accidentally setting off the siren in the ambulance when she intended to honk the horn. In contrast, Leisen alleges that she once made a complaint to her supervisors about a male co-worker who on one occasion drove erratically in the ambulance, and that the supervisor merely privately informed the male driver of her complaint. (Leisen Dep. at 165).

■■ While Defendant does not address these specific allegations of disparate treatment in its reply brief, we think that Leisen's allegations cannot survive summary judgment, because they fail to establish both the third and fourth elements of a prima facie case of disparate treatment. In both instances, the only action taken against Leisen was that she was publicly reprimanded and that she was sent home early after the incident in which she set off the ambulance siren. As part of her prima facie case of disparate treatment, Leisen must establish that she suffered a materially adverse change in the "terms, conditions, or privileges of employment." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 932 (7th Cir.1996) (citing 42 U.S.C. § 2000e–2). While adverse employment actions are not limited to such readily quantifiable losses as termination or demotion, "not everything that makes an employee unhappy is an actionable adverse ac-

tion." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996) (holding that negative performance evaluations did not constitute an adverse employment action). Leisen does not allege that any formal disciplinary action was taken against her or that the "reprimands" she received were anything more official than a scolding. We find that it would be unreasonable to conclude that these two instances of being publicly scolded by a supervisor amount to a materially adverse employment action.

■ Even if Leisen's public "reprimands" did constitute materially adverse employment actions, Leisen has failed to introduce facts showing that similarly situated male firefighters were treated any differently. With regard to her reprimand for cleaning the kitchen while on duty, Leisen merely makes the general claim that all firefighters cleaned the kitchen while on duty. She does not provide a single example of a male firefighter who cleaned the kitchen while on duty and was either reprimanded privately or not at all. Leisen cannot avoid summary judgment without providing some modicum of proof beyond her own unsupported assertion that her male co-workers were treated differently.

With regard to her reprimand for setting off the ambulance siren, Leisen has not presented any evidence that the male co-worker whom she alleges drove the ambulance erratically was similarly situated to her. Leisen was reprimanded by Steve Schoentrup, who was present in the ambulance when she set off the siren. Immediately after she set off the siren, Schoentrup told Leisen that she was not ever to use an emergency warning device to indicate her frustration at another driver. (Pltf. Exh. 19). When Leisen told Schoentrup that she had accidentally set off the siren, intending instead to honk the horn, he told her that it was also inappropriate to honk the horn of the ambulance in that manner. Schoentrup personally observed that Leisen then became very upset, driving erratically, crying and flipping off switches in the ambulance aggressively. (*Id.*). The male employee to whom Leisen compares herself did not misuse ambulance equipment, as Leisen did. Furthermore, the supervisor

who privately spoke to the male co-worker about Leisen's complaint did not personally witness that employee's driving, whereas Schoentrup was present when Leisen set off the siren, and reprimanded her on the spot for misusing ambulance equipment.

Because the facts alleged by Leisen fail to establish either that she suffered an adverse employment action or that similarly situated male employees were treated more favorably with regard to the manner in which they were reprimanded by supervisors, Defendant's motion for summary judgment is granted on Leisen's claim that she was subjected to disparate treatment with regard to the manner in which she was reprimanded by supervisors.

## C. Harassment and Disparate Impact Claims.

■ Leisen alleges numerous facts in support of her claim that she was subjected to sexual harassment and to a hostile work environment. Leisen also alleges that the policies of the City of Shelbyville, in particular their criteria for passing a physical agility test required of all firefighters, have a disparate negative impact on females, herself included. We need not recount the specific facts alleged by Leisen in support of these claims, however, because Leisen has failed to exhaust her administrative remedies on these claims.

■ "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western and South. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974)); *Prizevoits v. Indiana Bell Tel. Co., Inc.*, 882 F.Supp. 787, 791 (S.D.Ind.1995), *appeal dismissed*, 76 F.3d 132 (7th Cir.1996). In determining whether a particular claim is within the scope of the plaintiff's EEOC charge, we must determine whether there is a reasonable relationship between the allegations in the charge and the claims in the complaint. *Cheek*, 31 F.3d at 500. Although there is no

expectation that a layperson filing a charge of discrimination with the EEOC "artfully draft" that charge, a potential plaintiff "must at least have described, with some degree of specificity, the conduct she considered discriminatory." *Cheek*, 31 F.3d at 502.

As previously indicated, Leisen's initial EEOC charge filed on June 21, 1995, set forth five specific allegations of disparate treatment. On August 14, 1995, Leisen filed a second EEOC charge alleging that she was discriminated against because of a disability, and that she was retaliated against for filing her first EEOC charge. (Leisen Dep., Exh. 7). Neither of these two charges made any reference to claims of harassment or disparate impact, nor did they include factual allegations which might relate in any way to such claims. The mere fact that the allegations of disparate treatment described in Leisen's initial EEOC charge and the disparate impact and harassment claims she now seeks to pursue all allege various forms of sex discrimination is not enough to bring the latter claims within the scope of Leisen's EEOC charge. As the Seventh Circuit has explained, "[b]ecause an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination." *Cheek*, 31 F.3d at 500; *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir.1993) (finding that plaintiffs "job transfer" sexual harassment claim exceeded scope of EEOC charge regarding training, discharge and hostile environment sexual discrimination claims); *Prizevoits*, 882 F.Supp. at 791 (noting that "[d]ifferent claims of sex discrimination are not necessarily reasonably related to each other").

For the reasons discussed above, we find that the disparate impact and hostile work environment sex harassment claims asserted in Leisen's Complaint are beyond the scope of her EEOC charges. Accordingly, Defendant's motion for summary judgment is granted on those claims.

### D. Supplemental Jurisdiction over State Breach of Contract Claim.

 Having granted summary judgment as to all federal claims raised in Leisen's Complaint, we must now determine the status of her state law breach of contract claim. Subject matter jurisdiction over this case was based upon 28 U.S.C. § 1331, federal question jurisdiction. We exercise pendent, or supplemental jurisdiction over the related state claim. "[W]here the only basis for federal jurisdiction over a claim is that it is pendent or ancillary, or as is now called 'supplemental,' to a federal claim, 28 U.S.C. § 1367(a), the court should be, and it is, allowed to relinquish jurisdiction over the supplemental claim if the federal claim falls out of the case before judgment." *Chapman v. Currie Motors. Inc.*, 65 F.3d 78, 81 (7th Cir.1995) (citing *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.1994); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181–82 (7th Cir.1993)), *reh'g and suggestion for reh'g en banc denied* (1996). Factors to be considered in this discretionary determination include "values of judicial economy, convenience, fairness, and comity." *Barraclough v. ADP Automotive Claims Services, Inc.*, 818 F.Supp. 1310, 1312 (N.D.Cal.1993) (remanding only remaining state claim to state court after dismissing ADA claim). "In a case in which all federal law claims are eliminated before trial, the balance of these factors will generally point toward declining to exercise jurisdiction over the remaining state law claims." *Id.*, (quoting *Nishimoto v. Federman–Bachrach & Association*, 903 F.2d 709, 715 (9th Cir.1990)). Because all federal claims have been eliminated by this grant of summary judgment, we decline to exercise jurisdiction over the remaining breach of contract claim. Accordingly, Leisen's state law breach of contract claim is hereby dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1) Leisen has failed to establish that she suffered from a disability which substantially impaired a major life activity.

Accordingly, Defendant's motion for summary judgment on Leisen's ADA claim is **granted**.

2) Leisen has failed to establish a prima facie case of disparate treatment with regard to her allegations that she was treated differently by Defendant with regard to 1) the assignments she received while under medical restrictions, 2) the departmental practice of firefighters "trading time" by filling in for one another, 3) her disciplinary write-up for violating grooming standards, 4) the documentation in her personnel file of a conversation she had with another firefighter and 5) the manner in which she was reprimanded. Leisen has failed to assert that Defendant's proffered legitimate nondiscriminatory reasons for not assigning her to the squad or the engine are pretextual. Accordingly, Defendant's motion for summary judgment on Leisen's Title VII Disparate Treatment claims is **granted**.

3) Leisen's disparate impact and sexual harassment/hostile work environment claims are beyond the scope of her EEOC charges. Accordingly, Defendant's motion for summary judgment on Leisen's Title VII disparate impact and harassment/hostile work environment claims is **granted**.

4) Because summary judgment has been granted on all of Leisen's federal claims, her remaining state law breach of contract claim is **dismissed without prejudice**.