101 F.3d 519
 6 A.D. Cases 106, 19 A.D.D. 53, 9 NDLR P 3
 Sherrylen WEILER, Plaintiff-Appellant,
v.
HOUSEHOLD FINANCE CORPORATION, a Delaware corporation,
Household International Company, a Delaware
corporation, and Terrence Skorupka,
Defendants-Appellees.
 No. 95-3063.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 5, 1996.
Decided Nov. 27, 1996.
 
 Peter M. Barron (argued), Northbrook, IL, for Plaintiff-Appellant.
 Jules I. Crystal, Ross & Hardies, Chicago, IL, Paul E. Freehling (argued), Jacqueline E. Kalk, D'Ancona & Pflaum, Chicago, IL, for Defendants-Appellees.
 Before CUDAHY, MANION, and ROVNER, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Sherrylen Weiler worked for Household Finance Corporation ("HFC") for several years. She now claims that job stress caused her to develop a temporal mandibular joint ("TMJ") disorder and her supervisor caused her anxiety and depression by yelling at her during a review of her job performance. Because she feels HFC did not reasonably accommodate her by placing her with a different supervisor, she seeks recovery under the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. § 12101 et seq. By her own contentions and the testimony of her psychotherapist she is not "disabled" as defined by the ADA, nor is she a "qualified individual" under the Act. Moreover, even if she were disabled her employer acted to reasonably accommodate her. Accordingly, we affirm the district court's grant of summary judgment for her employer.
 
 I.
 
 2
 Sherry Weiler began work as a senior account clerk at HFC in November 1987, worked for nine months, but then resigned to move to California. After her plans changed, she asked the company if she could return to work. HFC agreed to take her back, but it had to place her in a new department (albeit in the same position) because it had filled her previous job. Weiler returned to HFC with no change in salary, seniority, or benefits. During her first nine months with the company she worked under Terrence Skorupka without incident.
 
 
 3
 In October 1991 HFC promoted Weiler to manager of branch accounting and increased her duties, responsibilities, and salary. Skorupka became her supervisor again in this new position. While in this new position Weiler suffered a knee injury. She received short-term disability benefits, as well as all the time off work she needed to attend physical therapy. In July 1992 Weiler was diagnosed with a TMJ disorder, which caused pain in her jaw, head and shoulders. Her oral surgeon attributed this condition in part to stress at her job. She was allowed to leave work early two to three times per week for therapy, and received short-term disability benefits for this health problem as well. During this time period Skorupka remained Weiler's supervisor.
 
 
 4
 On February 25, 1993, Skorupka met with Weiler in HFC's cafeteria for her annual employment review. The meeting did not go smoothly. Skorupka criticized certain aspects of Weiler's performance. Weiler responded by noting some areas in which she said she performed well but without credit. Weiler claims that at the meeting Skorupka raised his voice, lunged across the table, and made her very uncomfortable with his tone of voice and sarcasm. She left the meeting in tears and reported the incident to HFC's human resources department. (Before the review, Weiler had made no complaints about Skorupka to that department or Skorupka's supervisor.) Weiler also sought a transfer to a supervisor other than Skorupka. HFC's personnel manager told her that no such position was then available, but that she would look. She also told Weiler that she could "post" (place her name as available) for any other position open in the company. In fact, Weiler was familiar with this procedure, as she had used it to obtain her promotion to manager of branch accounting.
 
 
 5
 Soon thereafter Weiler's psychotherapist, Neil Mahoney, contacted HFC and stated that Weiler was temporarily disabled by depression and anxiety and therefore unable to come to work. HFC extended short-term disability benefits to Weiler for her condition for six months, from March through September 1993, the maximum period permitted by HFC's disability insurance policy. When Weiler was no longer eligible to receive short-term benefits, HFC applied on her behalf for long-term benefits. HFC's insurer denied this application on the ground that Weiler was able to work. Weiler admits HFC also paid a portion of her medical and therapeutic costs arising from her condition. In November 1993, nine months after the confrontation in the cafeteria, HFC's human resources director contacted Weiler regarding five available positions in her salary grade. Weiler chose not to post for any of these positions. Through her attorney, Weiler responded only that "she was unable to work for HFC."
 
 
 6
 Weiler sued HFC, its parent Household International Co., and Skorupka, claiming disability discrimination in violation of the ADA, and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. She also sued for intentional infliction of emotional distress as provided for by Illinois state law. HFC moved to dismiss Weiler's suit for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3), asserting that neither of Weiler's federal claims were colorable and that she could not remain in federal court on only her state claim. The district court denied this motion. After additional discovery, HFC moved for summary judgment on Weiler's ADA claim, which the district court granted. Weiler voluntarily dismissed her sex discrimination and emotional distress claims.
 
 
 7
 The district court had federal question jurisdiction over Weiler's claims pursuant to 28 U.S.C. § 1331. This court has jurisdiction pursuant to 28 U.S.C. § 1291. In Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560 (7th Cir.1996), we recently set out the applicable standard of review of a district court's grant of summary judgment in an ADA case:
 
 
 8
 We assess the record de novo and reach our own conclusions regarding law and fact. We will not resolve factual disputes or weigh conflicting evidence. We will only determine whether a genuine issue of material fact exists for trial, which is the case where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." In reaching a conclusion as to the presence of a genuine issue of material fact, we must view the evidence and draw all inferences in a way most favorable to the nonmoving party. Where there is no genuine issue of material fact, the sole question is whether the moving party is entitled to judgment as a matter of law. If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party.
 
 
 9
 Id. at 562 (citations omitted).
 
 II.
 A. Applicable Law
 
 10
 As is the case with any ADA plaintiff, Weiler must suffer from a "disability" as defined in the Act to invoke the Act's protection. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). EEOC regulations interpreting the Act define the phrase "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. at 1630.2(i). "Substantially limits" means that the person is either unable to perform a major life function or is "significantly restricted as to the condition, manner or duration" under which the individual can perform a particular major life function, as compared to the average person in the general population. 29 C.F.R. at 1630.2(j). See Homeyer v. Stanley Tulchin Assoc., Inc., 91 F.3d 959, 961 (7th Cir.1996). These definitions are unique to the ADA. Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA. See Overton v. Reilly, 977 F.2d 1190, 1196 (7th Cir.1992); Smith v. Dovenmuehle Mortgage., Inc., 859 F.Supp. 1138, 1141-42 (N.D.Ill.1994); see also Robinson v. Neodata Serv., Inc., 94 F.3d 499, 502 n. 2 (8th Cir.1996) (Social Security determinations not synonymous with determination of whether plaintiff is "qualified individual" for purposes of the ADA) (citing Overton, 977 F.2d at 1196; Smith, 859 F.Supp. at 1141-42). As this court has stated before, "an inability to perform a particular job for a particular employer" is not sufficient to establish a substantial limitation on the ability to work; rather, "the impairment must substantially limit employment generally." Byrne v. Bd. of Educ., School of West Allis-West Milwaukee, 979 F.2d 560, 565 (7th Cir.1992); see also Homeyer, 91 F.3d at 961.
 
 
 11
 The ADA imposes a condition on what it proscribes: it prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a) (emphasis supplied); 29 C.F.R. § 1630.4; 29 C.F.R. app. § 1630.9. This phrase is defined, in pertinent part, as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The plaintiff bears the burden of proof on this issue; she must be able to show that she is a "qualified individual with a disability" in order to successfully prosecute an ADA claim. DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 n. 3 (7th Cir.1995). A plaintiff must pass a two-step test to be a "qualified individual with a disability." 29 C.F.R. app. § 1630.2(m). First, the individual must satisfy "the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Id. Second, the individual must be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. This definition is unique to this Act. Whether the plaintiff meets the "qualified individual with a disability" definition is determined as of the time of the employment decision. Id.
 
 B. Analysis
 
 12
 1. "Disability" under the ADA.
 
 
 13
 Weiler's position, as stated at oral argument, is that a mental condition caused by an employer's workplace can qualify as a disability under the ADA. Weiler attributes the cause of her "disability" to her former employer; but for her working conditions at HFC, she would not suffer from these ailments. Once she told a representative of HFC that Skorupka was causing her stress and anxiety, she asserts, HFC had a duty to step in and transfer either her or him to alleviate her problems. In fact, Weiler argues she could have returned to work at HFC under a different supervisor. She claims that at the very least a genuine issue of material fact exists as to whether the TMJ disorder, anxiety, and depression substantially limit her work and thus qualify her as "disabled" under the Act.[1]
 
 
 14
 Weiler's claim amounts to a charge that she is only unable to work if Skorupka is her boss. Aside from the fact that this contradicts her psychotherapist's testimony, whatever Weiler's problem was with Skorupka, it is not recognized as a disability under the ADA. The major life activity of working is not "substantially limited" if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance. See, e.g., Palmer v. Circuit Ct. of Cook Cty., Social Service Dep't, 905 F.Supp. 499, 507 (N.D.Ill.1995) (evidence that plaintiff had a personality conflict with her supervisor which caused her to suffer anxiety and depression not a disability); Adams v. Alderson, 723 F.Supp. 1531, 1531-32 (D.D.C.1989) (personality conflict with an "antagonizing supervisor" not a disability under the ADA), aff'd, 1990 WL 45737 (D.C.Cir.1990) (per curiam).
 
 
 15
 Moreover, "exclusion from one position of employment does not constitute a substantial limitation of a 'major life activity.' " Byrne, 979 F.2d at 565; see also Forrisi v. Bowen, 794 F.2d 931, 934-35 (4th Cir.1986) (plaintiff with fear of heights not disabled because condition did not substantially limit plaintiff's work, only his ability to perform particular job); Duff v. Lobdell-Emery Mfg., Co., 926 F.Supp. 799, 806-07 (N.D.Ind.1996) (employer does not regard employee as disabled simply by finding employee incapable of satisfying the singular demands of a particular job); Howard v. Navistar Int'l Transp. Co., 904 F.Supp. 922, 929 (E.D.Wis.1995) (employee did not suffer impairment that substantially limited major life activity, and thus was not disabled, because he could not operate certain piece of machinery). Rather, with respect to the major life activity of working, "substantially limits" must mean significantly restricts the ability to perform a class of jobs or a broad range of jobs in various classes. See 29 C.F.R. § 1630.2(j)(3)(i). Weiler claims she can do her job, but not while being supervised by Terry Skorupka. If Weiler can do the same job for another supervisor, she can do the job, and does not qualify under the ADA. We conclude that Weiler is not "disabled" as that term is used in the ADA.
 
 
 16
 2. "Qualified individual" under the ADA.
 
 
 17
 Recovery under the ADA also requires a plaintiff to establish she is a "qualified individual with a disability." The phrase means that "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." See 42 U.S.C. § 12111(8). Thus, a person with a disability is qualified if she has the requisite skills, experience, and education for a job she holds or desires and can perform the essential functions of that job with or without reasonable accommodation. 29 C.F.R. app. § 1630.2(m).
 
 
 18
 The undisputed facts establish that Weiler is unable to perform the essential functions of her position. Specifically, a March 2, 1993 letter from Weiler's psychotherapist stated that Weiler could not return to work at HFC in any position. Dr. Mahoney reiterated this opinion in writing on numerous occasions and sent these conclusions on to HFC. At no time did Weiler contact HFC and disagree with Dr. Mahoney on this point. In response to a request to admit, Weiler even conceded that "she is no longer able to work for HFC in any capacity." She did not qualify this admission in any way. See Bombard, 92 F.3d at 564 (admission in deposition testimony that plaintiff was "unable to work" meant plaintiff failed to produce sufficient evidence to establish genuine issue of material fact as to ability to perform essential functions of job with reasonable accommodation). Thus, Weiler's own doctor, not HFC, has concluded she could not perform her job, with or without a reasonable accommodation. Therefore, Weiler cannot establish that she is a "qualified individual with a disability" under the ADA--she was no longer qualified to do the job, and no accommodation would allow her to do it. The district court properly held that Weiler failed to meet her burden of proof on this requirement.
 
 
 19
 3. "Reasonable accommodation" under the ADA.
 
 
 20
 Under the ADA, an employer must reasonably accommodate the known physical or mental limitations of an otherwise qualified individual with a disability, unless the accommodation would impose an undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A). Weiler argues that HFC took no action to accommodate her: (1) once Skorupka was told about her TMJ disorder, and (2) when Weiler told the human resources department that she could not work with Skorupka. The district court ruled that HFC offered her reasonable accommodations, which she refused.
 
 
 21
 Here, Weiler has not offered a consistent argument. Dr. Mahoney submitted numerous "release to work" (a misnomer in this case) documents from March through May 1993 stating that Weiler was not able to return to work for HFC in any position. While Dr. Mahoney repeatedly told HFC that Weiler could not work in any capacity, she asserts HFC should have accommodated her request for a transfer to another supervisor (or to transfer Skorupka to a different department). According to plaintiff, she could have come back to work--as long as it did not mean working for Skorupka. All this time, HFC's short-term disability insurance was paying Weiler on the presumption that she cannot work.
 
 
 22
 The facts do not support Weiler's argument. HFC allowed Weiler the time off work she requested to attend therapy sessions for her TMJ disorder. HFC provided her with short-term disability benefits for 26 weeks. It also applied for long-term disability benefits on her behalf. It allowed her to post for a new position in the company in the same salary grade. HFC's personnel manager searched for a similar position for her in the company under a different supervisor, but none was available. HFC also granted Weiler an extended leave. HFC even contacted her and offered her alternative available positions within her salary grade and invited her to interview for them. She refused. Given how HFC extended itself for Weiler in these ways, HFC acted reasonably to accommodate Weiler before and after the TMJ syndrome occurred and before and after she left HFC.
 
 
 23
 The ADA does not require HFC to transfer Weiler to work for a supervisor other than Skorupka, or to transfer Skorupka:
 
 
 24
 An employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to "bump" other employees to create a vacancy so as to be able to reassign the disabled employee. Nor is an employer obligated to create a "new" position for the disabled employee. Furthermore, in order for an employer to be obligated to accommodate an employee by reassigning them to a different position, that accommodation must not impose an "undue hardship" on the employer.
 
 
 25
 Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir.1996) (citations omitted). Weiler's solution is that she return to work under a different supervisor. But that decision remains with the employer. In essence, Weiler asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility. See Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 384 (2d Cir.1996) (failure to assign employee to work under different supervisor did not violate reasonable accommodation requirement of ADA and Rehabilitation Act; "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to nondisabled persons.")
 
 
 26
 Posting allows employees at HFC to transfer to available positions in the company. Weiler admits that she was never denied an opportunity to post. She knew how to post, as she had previously used the procedure to attain the position of branch accounting manager. In November 1993, HFC's human resources director contacted Weiler regarding five available positions in her salary grade. Weiler did not attempt to post to any of them. Her only response was a letter from her attorney that she was unable to work for HFC. HFC reasonably accommodated Weiler by giving her the various offers and opportunities to post for available positions.
 
 
 27
 Weiler has not demonstrated what more HFC could reasonably have done to accommodate her short of creating an entirely new position for her and waiting indefinitely for her to return to work. For good reason, the ADA makes no such requirement of an employer. An employer cannot "reasonably accommodate" an employee who refuses to return to work. Under the ADA, HFC properly accommodated Weiler considering her limitations.
 
 III.
 
 28
 Not every personal discomfort nor workplace embarrassment rises to the level of a recognized disability requiring accommodation under the law. The major life activity of working is not "substantially limited" if a plaintiff merely cannot work under a certain supervisor. Weiler's own doctor--not HFC--concluded she was not capable of performing her job. Thus, she is not a "qualified individual" under the ADA. Moreover, no accommodation would allow her to do her job. Even if Weiler were qualifiedly disabled, HFC did more than enough to accommodate her along the way.
 
 
 29
 For these reasons, we affirm the district court's grant of summary judgment.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 Weiler incorrectly claims that the district court found her disabled when it denied HFC's motion to dismiss. A decision that the plaintiff alleged facts sufficient to survive a motion to dismiss is not a ruling on the merits of her allegations. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir.1989)