Michael G. **POTTER**, Plaintiff,

v.

**XEROX CORPORATION,
Health International,
Inc.**, Defendants.

No. 98–CV–6166L.

United States District Court,
W.D. New York.

March 31, 2000.

paras. 5, 6(e) ("the Company should be entitled to summary judgment on its counter-claim in the amount of $204.26").

Theodore S. Kantor, Bilgore, Reich, Levine, Kroll & Kantor, Rochester, NY, for Michael G. Potter, plaintiff.

Margaret A. Clemens, Nixon, Peabody LLP, Rochester, NY, for Xerox Corporation, defendant.

Francis E. Maloney, Jr., Bond, Schoeneck & King, Syracuse, NY, for Health International, Inc., defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Michael G. Potter, commenced this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. § 621 *et seq.* Plaintiff alleges that his former employer, defendant Xerox Corporation ("Xerox"), and defendant Health International, Inc. ("HI"), which administered Xerox's disability benefits plan, discriminated against him on account of his age and disability. Plaintiff seeks compensatory and punitive damages, as well as reinstatement to employment with Xerox and other equitable relief. Both defendants have moved for summary judgment.

## FACTUAL BACKGROUND

Plaintiff, who was born in 1945, began working for Xerox in 1965. In January 1996, plaintiff went on short-term disability leave from his position as a Corporate Security Investigator due to his depression and anxiety.

Plaintiff's short-term disability benefits lasted for five months, after which he fell under Xerox's long-term disability plan ("the Plan"). Although the short-term plan defined a disability more narrowly as "[t]he inability of an employee to perform his or her job responsibilities because of personal impairment caused by injury or illness," the long-term plan defined a disability as "[t]he inability of an employee to be employed in any substantial and gainful work either inside or outside of Xerox because of personal impairment caused by injury or illness ...." HI's Motion for Summary Judgment Ex. H. Under the Plan, plaintiff was required to submit to a medical exam to determine whether he was entitled to long-term benefits. HI therefore arranged for plaintiff to be examined by Thomas Letourneau, M.D.

In a report dated July 10, 1996, Dr. Letourneau found that although plaintiff had a Depressive Disorder, he had also "adopted an invalid position, he has dug in his heels and decided that he can never return to work at any position, anywhere." *Id.* Ex. B. Because Dr. Letourneau believed that "[t]his invalid status [wa]s dangerous to [Potter's] mental health, and should be interrupted," and that there was "very little impairment" of some other aspects of plaintiff's functioning, he concluded that "the most fair and therapeutic statement would be that he is able to work." *Id.* Dr. Letourneau cautioned, however, that because plaintiff's condition stemmed from his problems with management at work, "steps must be taken to resolve this dispute between him and his management. Otherwise, his return to work will almost certainly be marked very quickly by a return of his symptoms which will render him disabled, probably within a matter of just a few days of his return." *Id.*

Based on Dr. Letourneau's report, HI concluded that plaintiff was not eligible for

long-term benefits. When plaintiff appealed that decision, HI arranged for another examination, this time by Joseph A. Messina, M.D. Dr. Messina found that because of plaintiff's problems with his prior supervisor, James Danylyshyn, "there is little question that he is currently disabled from his current position," but he added that he "would not consider him permanently disabled or unable to work in alternative areas at Xerox or with another company." *Id.* Ex. C.

HI issued a Final Appeal Decision Letter on January 30, 1997, finding that plaintiff's appeal was properly denied. *Id.* Ex. D. Pursuant to its policies, Xerox then conducted a forty-five-day search for other positions for which plaintiff was qualified. The parties dispute whether Xerox found or could have found any suitable positions, but it is clear that Xerox did not offer any other position to plaintiff. Xerox terminated plaintiff in March 1997 on the ground that no suitable positions for plaintiff were available.

Plaintiff filed a charge of disability and age discrimination with the Equal Employment Opportunity Commission in October 1997. Although the record does not appear to contain a copy of a right-to-sue letter, the parties do not dispute that plaintiff has met the procedural requirements for bringing this action.

It is not entirely clear from the complaint precisely in what manner plaintiff alleges that defendants violated his rights. In particular, it is difficult to discern whether plaintiff claims that he should not have been terminated because he *can* work, or whether he should have been given long-term disability benefits because he *cannot* work. For instance, the complaint alleges that Xerox failed to offer him work elsewhere within the company even though there allegedly were openings for which plaintiff was qualified. Complaint ¶ 13. Elsewhere, however, the complaint states that HI misrepresented and falsified information that caused him to be denied "both his employment and/or the disability

benefits to which he should otherwise have been entitled to [sic]." Complaint ¶ 19.

Plaintiff's Memorandum of Law in opposition to defendants' motions also appears to challenge the correctness or validity of HI's finding that he was not eligible for long-term benefits, because HI allegedly ignored certain information pertinent to plaintiff's condition. Yet plaintiff also clearly contends that Xerox wrongfully found that there were no positions available that plaintiff could have been given.

Perhaps in part because of plaintiff's own ambiguity about these matters, defendants themselves have taken positions that are in some respects at odds with each other. For example, one of Xerox's arguments is that plaintiff cannot establish that he is a "qualified individual" within the meaning of the ADA because by his own admissions, plaintiff has allegedly conceded that he cannot work at all, with or without reasonable accommodation. HI, however, argues that plaintiff's ADA claim must fail because his condition does not fit within the ADA's definition of a disability as an "impairment that substantially limits one or more of the major life activities of [an] individual." 42 U.S.C. § 12102(2)(A). HI contends that plaintiff is not so limited because he could work, as long as he was not under the direction of Danylyshyn.

## DISCUSSION

### I. Claims Against Health International, Inc.

After reviewing the record, I find no basis upon which HI could be held liable under either the ADA or the ADEA. I therefore grant HI's motion for summary judgment.

First, it does not appear that plaintiff even alleges an ADEA claim against HI. The only basis for his ADEA claim is his allegation that Xerox terminated him on account of his age. Thus, there is no ADEA claim against HI.

As for plaintiff's ADA claim, his allegations and the evidence simply do not sup-

port any finding that HI discriminated against him because of his alleged disability. As explained later in this Decision and Order, I find that plaintiff has not established that he has a "disability" as that term is defined in the ADA. Even if he did have a disability, however, there is no evidence that HI discriminated against him because of it.

The gist of plaintiff's claim against HI is that HI allegedly "misrepresent[ed] and falsif[ied] information and data" regarding plaintiff's condition and that it "engaged in fraudulent conduct" toward plaintiff. Complaint ¶¶ 19, 20. Plaintiff claims that HI ignored certain medical evidence, or otherwise "stacked" the evidence so that it could find—wrongfully, according to plaintiff—that plaintiff was not disabled.

I fail to see how this constitutes "discrimination" on account of plaintiff's alleged disability. All that plaintiff alleges is that HI should have found him eligible for benefits. His claim, then, is more in the nature of a claim for benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1). Plaintiff, however, has expressly disavowed any intent to present a claim under ERISA. *See* Plaintiff's Memorandum of Law at 15 ("plaintiff's claim is based upon the defendants' disability and age discrimination against him, ... not upon some ... ERISA claim ...").

Plaintiff has presented no authority that a mere denial of disability benefits can properly be construed as a discrimination claim under the ADA, and I am not persuaded that such a claim is proper. Accordingly, HI's motion for summary judgment is granted. *See Dedyo v. Baker Engineering New York, Inc.,* No. 96 Civ. 7152, 1998 WL 9376 *12 (S.D.N.Y. Jan.13, 1998) ("a simple denial of entitlement under a disability plan does not state a claim under the ADA"); *McDonald v. Massachusetts,* 901 F.Supp. 471, 478–79 (D.Mass. 1995) ("The plaintiff does not contend that he has been denied any benefits 'by reason of' any disability. Rather, [the plaintiff] asserts, fundamentally, that on account of

his disability, he is due benefits that have not been provided. Such a claim, quite simply, is not cognizable under the ADA").

I also note that the complaint alleges that HI engaged in fraudulent conduct and inflicted emotional distress upon plaintiff by telephoning him and his wife "repeatedly and at odd hours...." Complaint ¶¶ 20, 21. To the extent that plaintiff seeks to assert state law claims for fraud or for intentional or negligent infliction of emotional distress, I decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c); *see Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990).

## II. ADA Claim

In addition to my finding that plaintiff's claims against HI must be dismissed, I find that his ADA claims against both defendants fail for an additional reason: plaintiff has not shown that he has a "disability" as that term is defined in the ADA.

Section 12101(2)(A) of Title 42 defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual...." Here, the record indicates that plaintiff's impairment is his inability to work under the supervision of Danylyshyn. That does not rise to the level of a disability under the statutory definition. A number of courts have rejected ADA claims premised upon such allegations. *See, e.g., Gaul v. Lucent Technologies, Inc.,* 134 F.3d 576, 580 n. 3 (3d Cir.1998) ("we strongly suspect that a plaintiff who is unable to work with individuals who cause him 'prolonged and inordinate stress' cannot be said to be incapable of performing a 'class of jobs or a broad range of jobs in various classes'"); quoting 29 C.F.R. § 1630.2(j)(3)); *Siemon v. AT&T Corp.,* 117 F.3d 1173, 1176 (10th Cir.1997) (plaintiff's "mental impairment merely prevent[ed] him from working under a few supervisors within the organizational structure of one major corporation," and he was therefore "not an 'individual

with a disability'" under the ADA); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 524 (7th Cir.1996) ("Weiler's claim amounts to a charge that she is only unable to work if Skorupka is her boss.... [W]hatever Weiler's problem was with Skorupka, it is not recognized as a disability under the ADA"); *Mescall v. Marra*, 49 F.Supp.2d 365, 373 (S.D.N.Y.1999) ("Mescall's inability to work as a guidance counselor under the supervision of Delgado does not constitute a disability within the meaning of the ADA"); *Osika v. Board of Educ.*, No. 98 C 5953, 1999 WL 1044838 *4 (N.D.Ill. Nov.16, 1999) ("In suggesting a transfer [from allegedly stressful environment at school where plaintiff worked] as her only accommodation, Plaintiff undermines her own case" by "underscor[ing] the fact that she is not restricted from performing a wide spectrum of jobs, a prerequisite to proving a disability under the ADA"); *Paleologos v. Rehab Consultants, Inc.*, 990 F.Supp. 1460, 1465 (N.D.Ga.1998) (stress condition triggered by mere thought of interaction with defendant's management does not constitute a disability under the ADA); *Stroman v. Blue Cross and Blue Shield Ass'n*, 966 F.Supp. 9, 11 (D.D.C.1997) (inability to work for particular supervisor does not qualify as disability), *aff'd*, 159 F.3d 637 (table), 1998 WL 230211 (D.C.Cir.1998); *Langford v. County of Cook*, 965 F.Supp. 1091, 1096 (N.D.Ill.1997) (plaintiffs' allegation that they were able to work, but only under a different supervisor, did not state ADA claim); *Stauffer v. Bayer Corp.*, No. 3:96–CV–661, 1997 WL 588890 *9 (N.D.Ind. July 21, 1997) ("Ms. Stauffer's mere inability to perform work at Bayer under one supervisor and with one coworker is insufficient to prove that she has an impairment that substantially limits her major life activity of work"); *Palmer v. Circuit Ct. of Cook County*, 905 F.Supp. 499, 507 (N.D.Ill.1995) (evidence that plaintiff had personality conflict with her supervisor which caused her to suffer anxiety and depression not a disability), *aff'd*, 117 F.3d 351 (7th Cir.1997), *cert. denied*, 522 U.S. 1096, 118 S.Ct. 893, 139 L.Ed.2d 879 (1998).

■ Although plaintiff testified that he did not believe that he could hold down *any* job, regardless of who his supervisor would be, that allegation does little to support his claim, for several reasons. First, if in fact that is plaintiff's position, as explained above, he would be barred from asserting a claim under the ADA because there would exist *no* reasonable accommodation that would allow him to work. Secondly, the medical evidence supports HI's finding that plaintiff was not truly disabled, but only unable to work under Danylyshyn's supervision. As stated, both Drs. Letourneau and Messina concluded as much, based on their specific findings that in many respects, plaintiff's social and other functioning was not significantly impaired.

In support of his claim, plaintiff points to medical evaluations of him by other physicians. These opinions, however, are not helpful either. One of these, Mark J. Klein, M.D., evaluated plaintiff on May 9, 1996, at HI's request, in connection with plaintiff's claim for *short*-term disability benefits. He opined that "at the present time," plaintiff was "totally disabled from any type of work." Plaintiff's Affidavit (Docket Item 22) Ex. B. Dr. Klein further stated that with a combination of pharmacotherapy and psychotherapy, plaintiff might "possibly be able to return to work in three to six months, although ... the prognosis appears guarded." *Id.* Thus, this opinion expressly left open the possibility that plaintiff might be able to return to work in a few months.

Plaintiff also notes several letters that were either provided to him or sent to HI by his psychiatrist, Mel Pisetzner, M.D. In a letter dated July 16, 1996, Dr. Pisetzner stated that he "disagree[d] strongly" with Dr. Letourneau's conclusion that plaintiff could return to work, and that plaintiff was "clearly unable to return to work at the present time." Plaintiff's Affidavit Ex. A. In a letter dated December 11, 1996, Dr.

Pisetzner stated that plaintiff was "unable to work in any capacity." *Id.* Dr. Pisetzner repeated those words in a letter dated July 21, 1997. *Id.* In addition, in a letter dated June 5, 1997, Charles V. Grizzanti, M.D., and David W. Stobie, RPA–C, who had also treated plaintiff, opined that plaintiff was "totally disabled" as a result of "work related stress." *Id.*

The problem with plaintiff's reliance on these opinions is that, if in fact they are correct, they indicate that plaintiff was *completely* unable to work in *any* capacity. Thus, they do not indicate that some reasonable accommodation could have been made that would have allowed plaintiff to return to work. Again, these opinions would tend more to support a claim for benefits under ERISA (though I express no opinion that such a claim would have merit) than a claim under the ADA. The recommendations of these physicians was simply that plaintiff be allowed not to work at all, not that some accommodation be made so that he could work. Such evidence does not support an ADA claim.

■ I also find that plaintiff's ADA claim is flawed in another respect. Assuming that the "accommodation" requested here was transfer to a different department under a different supervisor, that is not considered to be a "reasonable" accommodation under the ADA. A request to change supervisors is presumed to be unreasonable, and the burden of overcoming that presumption lies with the plaintiff. *Kennedy v. Dresser Rand Co.,* 193 F.3d 120, 122–23 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1244, 146 L.Ed.2d 103 (2000). Plaintiff has not presented evidence upon which a jury could find that he has overcome that presumption. For one thing, plaintiff's own deposition testimony casts doubt on whether he could in fact have handled a job under a different supervisor. Moreover, plaintiff's requested accommodation seems to be that Xerox provide him with a completely stress-free environment, which no employer is obligated to do under the ADA. *See Gaul,* 134 F.3d at 581 ("The only certainty for [de-

fendant] would be its obligation to transfer Gaul to another department whenever he becomes 'stressed out' by a coworker or supervisor. It is difficult to imagine a more amorphous 'standard' to impose on an employer"); *Weiler,* 101 F.3d at 526 ("The ADA does not require [defendant] to transfer Weiler to work for a supervisor other than Skorupka, or to transfer Skorupka"); *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 384 (2d Cir. 1996) (failure to assign employee to work under different supervisor did not violate reasonable accommodation requirement of ADA and Rehabilitation Act; "Indeed, nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy. Congress intended simply that disabled persons have the same opportunities available to them as are available to non-disabled persons"); *Pesterfield v. Tennessee Valley Auth.,* 941 F.2d 437, (6th Cir. 1991) ("It would be unreasonable to require that TVA place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability"); *see also Wernick,* 91 F.3d at 384–85 (employer did not have affirmative duty to provide disabled employee with job for which she was qualified); *Parisi v. Coca–Cola Bottling Company of New York,* 995 F.Supp. 298, 303–304 (E.D.N.Y.1998) (same), *aff'd,* 172 F.3d 38 (table), 1999 WL 66164 (2d Cir.1999). For all these reasons, then, I find that plaintiff's claims under the ADA must be dismissed.

### III. ADEA Claim

As stated, plaintiff's age discrimination claim under the ADEA is asserted only against Xerox, based on its termination of him. After reviewing the record, I find that even construing the evidence in the light most favorable to plaintiff, he has failed to show the existence of a genuine issue of material fact that could defeat Xerox's motion for summary judgment.

To make out a prima facie case of age discrimination under the ADEA, plaintiff must show that: (1) he is at least forty years of age; (2) he was qualified for his position; (3) he was terminated; and (4) the termination occurred under circumstances giving rise to an inference of age discrimination. *Grady v. Affiliated Central, Inc.*, 130 F.3d 553, 559 (2d Cir.1997), *cert. denied*, 525 U.S. 936, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998). Assuming *arguendo* that plaintiff was "qualified" for his position (although his own testimony indicates that he was not, since he stated that he was unable to work at all), I find that he has not presented sufficient evidence that his age played a role in Xerox's decision to terminate him.

The only evidence of age discrimination presented by plaintiff is his unsubstantiated "understanding over many years that Xerox has a history of age discrimination," Potter Tr. at 198, and Scroger's testimony concerning certain remarks allegedly made by Denise DiPasquale, who was one of plaintiff's managers. Scroger testified that on three or four occasions, DiPasquale made statements "implying that Mike [Potter]'s speed had to do with his age as opposed to a young person," although he could not recall her exact words. Scroger Tr. at 40. He stated that DiPasquale was "exasperated" by plaintiff's lack of speed in his work, which, he said, "was probably a common thing with all of Mike's managers. It was a common thing with me." *Id.* at 41.

Later in his deposition testimony, however, Scroger stated that he was "not certain that [DiPasquale] was blaming her perception of [plaintiff's] slowness on his age," *id.* at 58, and that DiPasquale would bring up the subject of age "[v]ery flippantly, surrounded by, 'God damn old men,' and that kind of thing," which Scroger seemed to think was at least in part jokingly directed at him, since he was "maybe the oldest old man in corporate security at the time...." *Id.* at 59. He stated that he did not recall anyone else being present during any of these "first in the morning coffee cup discussions," and

he thought that "it would be unlikely that [DiPasquale] would have made such comments in anyone else's presence." *Id.* at 59–60.

This evidence is thin indeed, and certainly not enough to give rise to an issue of fact about whether plaintiff was terminated due to his age. First, plaintiff's subjective perception that Xerox has a history of age discrimination is not supported by any concrete evidence and is entitled to no weight at all.

DiPasquale's alleged remarks-none of which were made to plaintiff or in his presence-also fail to give rise to an issue of material fact. Her exasperation with plaintiff's lack of speed appears to have been shared by many if not all of plaintiff's supervisors, and Scroger was unable to explain why he believed that these comments were tied to plaintiff's age. In addition, even assuming that DiPasquale's alleged statements about "God damn old men" could support an inference of age-based animus on her part, there is no evidence at all that she was involved in Xerox's job search for plaintiff or its decision to terminate him. The request to terminate plaintiff came from Troy E. Hall, a Human Resources Manager who had initiated the job search, and was approved by Sharon Diehl in Xerox's Human Resources Operations department. Xerox's Motion for Summary Judgment Exs. I, J. Thus, DiPasquale's alleged statements have no relevance to Xerox's motivation for terminating plaintiff. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (statements or actions by nondecisionmakers, or actions unrelated to decisionmaking process, cannot support allegation of pretext) (O'Connor, J., concurring); *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 97 (1st Cir.1996). "Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory discharge." *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686

(7th Cir.1991). Therefore, "[t]o be probative of discrimination, isolated comments must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.,* 99 F.3d 238, 242 (7th Cir. 1996). There is no such relation here, and no evidence of age discrimination.

## CONCLUSION

Defendant Xerox Corporation's Motion for Summary Judgment (Docket Item 14) and defendant Health International, Inc.'s Motion for Summary Judgment (Docket Item 12) are granted, and the complaint is dismissed.

IT IS SO ORDERED.