Ricardo **BRADFORD**, Plaintiff–Appellant,

v.

**CITY OF CHICAGO**, Defendant–Appellee.

No. 04–1939.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 15, 2004.

Decided Jan. 12, 2005.

Rehearing Denied March 2, 2005.

Joan A. Hill–McClain, Chicago, IL, for Plaintiff–Appellant.

Mara S. Georges, Office of the Corporation Counsel Appeals Division, Chicago, IL, for Defendant–Appellee.

Before Hon. WILLIAM J. BAUER, Hon. JOHN L. COFFEY, and Hon. DIANE S. SYKES, Circuit Judges.

## ORDER

Ricardo Bradford is an administrative assistant at the City of Chicago's Department of Transportation. In December 1999 he received a fifteen-day suspension for violating the City's Violence in the Workplace policy by making threatening comments in the presence of co-workers. He sued the City, claiming that in suspending him it discriminated against him based on his race (black) and his disability (bipolar disorder) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* He also claims that the City should have accommodated his disability by transferring him to a different job after his suspension. The district court granted summary judgment for the City on all counts. We affirm.

On December 16, 1999, Bradford did not get his biweekly paycheck, apparently because his electronic timekeeping card had been malfunctioning. He spent much of that day speaking with various people trying unsuccessfully to fix the problem. Feeling increasingly frustrated, Bradford called his Employee Assistance Program counselor. During that phone call, he allegedly made some loud and angry comments about Patricia Perino, the administrative assistant responsible for verifying timekeeping records. Specifically, Perino reported that she overheard Bradford (whose cubicle was near hers) tell his counselor: "I would like to take my hands and wrap them around her neck and choke her." Later, Bradford took his concerns to Joan Ross, the Department's Director of Administrative Services. According to Ross, when she declined to speak with him, Bradford expressed his frustration by saying "this is the kind of stuff that makes people go postal" and "that's how people get hurt."

Perino and Ross each reported Bradford's outbursts to Donald O'Malley, the Department liaison responsible for enforcing the City's Violence in the Workplace policy. Under that policy, violence includes "written or verbal communications, whether direct or indirect, which are of a threatening, intimidating or coercive nature." Bradford denied that he had made any threatening comments, but after conducting an investigation, O'Malley concluded that Bradford had indeed violated the

policy. Bradford received a fifteen-day suspension.

When Bradford returned to work, he found himself uncomfortable around the people who had accused him of threatening them. He asked to be transferred to a different location or job position as an accommodation for his disability, asserting that his bipolar condition could be worsened by the stress of working with people who considered him mentally disturbed. He provided a supporting letter from his doctor stating that "[d]ue to the stress Mr. Bradford associates with his former office, I recommend that he be transferred to a different location to avoid a worsening of his condition in the future." The City denied the request.

Bradford then sued the City. He alleged that it discriminated against him when it suspended him for fifteen days, *see* 42 U.S.C. § 2000e–2(a)(1) (prohibiting discrimination based on race); 42 U.S.C. § 12112(a) (prohibiting discrimination based on disability), and that it failed to accommodate his disability when it refused his request for a transfer, *see* 42 U.S.C. 12112(b)(5)(A) (requiring reasonable accommodation to known physical or mental limitations).[1]

The district court granted summary judgment for the City on all counts. Finding no direct evidence of discrimination based on either race or disability, the court analyzed Bradford's discrimination claims under the indirect method of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which requires a plaintiff to show, among other things, that similarly situated employees outside of his protected group were treated more favorably. The court noted that Bradford had identified other City employees who, although they committed argu-

ably worse violations of the Violence in the Workplace policy, were disciplined less harshly. The court concluded, however, that Bradford had not supplied enough information about those employees to show that they were similarly situated. In particular, they appeared to have been disciplined by different supervisors in different departments, which usually negates a *prima facie* showing of discriminatory discipline. *See Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 618 (7th Cir.2000). Finally, the court rejected Bradford's failure-to-accommodate claim, citing our decision in *Weiler v. Household Finance Corp.,* 101 F.3d 519, 526 (7th Cir.1996), that a transfer away from particular supervisors or co-workers is not required as a "reasonable accommodation" under the ADA.

■ On appeal, Bradford challenges the district court's conclusion that the employees who were "punished less harshly for more serious offenses" were not similarly situated. Bradford acknowledges that generally other employees must have been disciplined by the same supervisor to be considered similarly situated. *See Radue,* 219 F.3d at 618. He insists, nevertheless, that it remains "a question of fact" whether the employees he identified were similarly situated, though he does not point to anything that might support such a finding. He does not dispute that those other employees were disciplined by different supervisors, nor does he provide any further information about their behavior, their circumstances, or the sanctions to which they were subjected. We find no reason that this case should be considered an exception to the general principle expressed in *Radue.* Because Bradford did not identify any similarly situated employ-

---

1. Bradford also claimed that the City retaliated against him for filing discrimination charges, but he has not pursued that claim on appeal.

ees who were treated more leniently than he was, summary judgment for the City was appropriate.

Bradford also challenges the district court's treatment of his failure-to-accommodate claim, arguing that the court improperly applied *Weiler* to his situation. In *Weiler*, the plaintiff alleged that working with a particular supervisor caused her stress, which in turn led to a severe jaw disorder and disabling depression and anxiety. She asked as an accommodation to be assigned to work with a different supervisor. We held, however, that the choice of a supervisor belongs to the employer, not the employee: "In effect, Weiler asks us to allow her to establish the conditions of her employment, most notably, who will supervise her. Nothing in the ADA allows this shift in responsibility." *Weiler*, 101 F.3d at 526.

█ Bradford argues that his case is different, but the contrast he proposes is not entirely clear: "Appellant sought a transfer due to the severe stress that he was suffering while working with people who he believed were fearful of him. His stress aggravated his illness. Therefore, his request for a transfer was medically necessary." He seems to be suggesting that his case is different because he, unlike Weiler, had a preexisting condition that was worsened by stress, rather than a condition that was itself caused by stress. In both cases, however, a conflict with a supervisor or with coworkers has led (or has the potential to lead) to significant medical problems. *Weiler* held that such a danger did not mandate a transfer. Although Bradford does seem to have significant problems that are compounded rather than created by stress, we do not see how that makes accommodation any more necessary here than in *Weiler*.

Bradford has not shown that he was discriminated against on the basis of his race or his disability. Nor has he shown that his bipolar disorder entitles him to the accommodation of a job transfer. We therefore AFFIRM the judgment of the district court.